## Hayes Houston

*v.*

## Peter W. Buer.

*Filed at Mt. Vernon June 12, 1886.*

1. REDEMPTION—*from tax sale—as distinguished from a purchase—when done by an agent, how far conclusive upon him.* Where a party to whom an agency had been turned over by a prior agent, assuming to act as agent of the owner, but having no funds of the latter in his hands, took an assignment to himself of a certificate of purchase at a tax sale, the assignment thereon reading, "to the use of J. B.," the agent, it was *held*, that as between the assignee and the owner of the land sold, the transaction would be taken as a redemption, and not a purchase, and that as against the principal he could not hold the land further than as a security for the redemption money paid.

2. Where a party assuming to act as the agent of the owner of land makes a redemption of the land from a tax sale, by paying the money necessary for that purpose and taking an assignment of the certificate of purchase, it can

not be undone subsequently by assigning back the certificate and accepting the money so paid. In such case the agent's act being for the benefit of the principal, his ratification may be presumed, but it is enough the person acting considered himself authorized, and was acting under color of authority.

APPEAL from the Circuit Court of Gallatin county; the Hon. CARROLL C. BOGGS, Judge, presiding.

Messrs. ROEDEL & SISSON, for the appellant:

Boyd being a stranger to the title, and having no interest in the land, had no right to redeem from the tax sale.

The acceptance of the redemption money by Mrs. Houston did not affect her right. She accepted the money on the representation of Boyd that he had a right to redeem, as Buer's agent. The assignment of the certificates was made without her knowledge or consent. When she learned the facts, she disavowed the act, and took steps to reinvest herself with the title to the certificates. *Byington* v. *Bookwalter,* 7 Iowa, 512; *Penn* v. *Clemens,* 19 Iowa, 372.

Boyd's conduct shows that the transaction with Mrs. Houston was a purchase on his part, and not a redemption. At the proper time he gave notice as the assignee, for the purpose of taking out a deed to himself.

Mr. SILAS RHOADES, for the appellee:

It is a matter of but little moment in what way an agent derives his power. If his authority is not disputed by his principal, no other person has a right to complain. *Marston* v. *Beasley,* 3 Ohio, 301.

Boyd, in making the redemption, was acting as agent for Buer, and it is well settled that a principal has the right to ratify the unauthorized acts of one who claims to act for him as agent. *Owings* v. *Hull,* 9 Pet. 607.

Section 215 of the Revenue act provides, that "where the purchaser receives the purchase money, or returns the certificates of purchase for cancellation, it shall operate as a re-

lease." If the purchaser accepts the redemption money, the sale is avoided, and the redemption inures to the benefit of the owner. *Cox* v. *Startwell*, 9 Harr. 480; *Orr* v. *Cunningham*, 4 Watts & Serg. 294; *Holloway* v. *Clark*, 27 Ill. 483.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill of complaint, filed in the Gallatin county circuit court, by Peter W. Buer, against Hayes Houston, to remove an alleged cloud of a tax deed upon the title to land. The circuit court decreed in favor of the complainant, upon his paying to the defendant the sum of $164.24, and the defendant appealed.

The bill charges there was a redemption from the tax sale, and further, that the tax deed was invalid for non-compliance with the statute in giving the notice of the tax sale, and in making the required affidavit under the Revenue law.

It appears that Buer was the owner of the land, and in 1875, and ever since, resided in Texas; that for that year he paid the taxes on the land, through H. C. Barger, of Gallatin county, who was his agent for the land, to pay taxes on it and sell timber from the land for the purpose, if he did not have the money to pay them. For the years 1876 and 1877 Barger failed to pay the taxes, and the land was forfeited to the State for the taxes of those years, and in 1879, in the month of September, one Mariah L. Houston became the purchaser of the land for the taxes of 1878 and the back taxes of 1876 and 1877. In the latter part of 1880, or early in 1881, Barger died; but some eight or nine months before, he sold his abstract books and real estate agency, including that of the land in question, to one John R. Boyd, of Shawneetown, and thereupon Boyd took charge of the land. Barger gave Boyd a list of the lands for which he was agent, in which was this Buer land. They then both wrote to all the owners for the purpose of getting them to ratify Barger's action in making Boyd agent. Neither of them heard from Buer until the

summer of 1882, when he came to see his land. At the time Barger turned over his business to Boyd, he informed the latter that Mrs. Houston had bought this Buer land for taxes, he not having any funds in his hands to pay taxes, and not being willing to advance money for that purpose. Boyd afterward applied to Mrs. Houston, through her son, John, to redeem the land, representing himself as Buer's agent. John Houston brought in the tax certificates, and Boyd redeemed the land, and took an assignment of the certificates through Mrs. Houston's son, John, he signing her name for her. The form of the assignment was, "to the use of John R. Boyd." Afterwards, Boyd, as assignee of Mariah L. Houston, gave notice of the tax sale, and that he would apply for a tax deed, by publication in a newspaper. After seeing the notice, Mrs. Houston applied to Boyd for a re-assignment of the certificates, claiming he had no right to redeem the land; that he was not the agent of Buer in redeeming, and tendering him back the redemption money which he had paid. Boyd first refused the money and to make a re-assignment, but afterwards accepted the money and re-assigned the certificates to Mrs. Houston, who obtained the tax deed, and subsequently made a quitclaim deed of the land to her son, the defendant. She had threatened Boyd that if he would not re-assign the tax certificates, she would have him indicted for obtaining goods under false pretences. After he had re-assigned the certificates, Boyd saw Buer, and the latter ratified the action of Barger in making Boyd agent. Boyd had not heard from Buer before the re-assignment, and had no funds of Buer in his hands.

There is no doubt that Boyd assumed to redeem from the tax sale for and on behalf of Buer, as his agent, and that as between these two the transaction would have been taken to be a redemption, and not a purchase by Boyd for himself, and that as against Buer, Boyd could not have held the land further than as security for the redemption money paid,

although the assignment of the tax certificate was taken "to the use of Boyd." It was so taken by him for the purpose of such security. Mrs. Houston evidently did not so understand it, supposing, from the assignment of the tax certificates that was made, that Boyd was purchasing and acquiring the title to the land for himself exclusively. Had she rightly understood the legal effect of what was done, there is reason to believe she would have remained content, as she herself testifies, "If John had signed my name by way of cancelling certificates, that would have been all right;" and again she says, before Boyd re-assigned the certificates, "I told him I would be satisfied if he would enter on the record that the land was redeemed for Peter Buer." What was done was, in legal effect, just this, and no more, except to give Boyd security on the land for the money he advanced, so that to establish there was a redemption, would be but to carry out what was the substantial desire and purpose of both the parties, Boyd and Mrs. Houston, in paying and accepting the redemption money; and a redemption having been made, it could not be undone by subsequently re-assigning the tax certificates and taking back the redemption money, especially when the reason thereof was the mistaken supposition, on the part of Mrs. Houston, that a redemption had not been effected.

The denial of there having been redemption, is, of course, upon the ground that Boyd was not the agent of Buer, authorized by him to make the redemption. Barger, at a former time, was such agent, having charge of the land to pay taxes on it. Quitting the real estate business, he sold out to Boyd, and placed in the latter's hands to manage and care for all the lands which Barger had the agency for, including this land in question. Thenceforth Boyd assumed to take care of the land. Buer residing in a distant State, both Barger and Boyd wrote to him informing him of the change of agency, but it so happened that Buer was not heard from until after the redemption was made. To make the redemption was a

mere ministerial act. It was beneficial to Buer, and his ratification of it might be presumed. · We do not think that the rule of a strict legal agency should be applied in. defeat of a redemption attempted to be made under such circumstances, but rather that a liberal view should be taken, so as to sustain the redemption, if it may consistently be done. The last clause of section 210 of the Revenue law, in relation to redemption from tax sales, is: "Any redemption made shall inure to the benefit of the person having the legal or equitable title to the property redeemed, subject to the right of the person making the same to be reimbursed .by the person benefited." Section 215 is: "The receipt of the redemption money of any tract of land or lot, by any purchaser, or the return of the certificate of · purchase for cancellation, shall operate as a release of all the claim to such tract or lot, under or by virtue of the purchase."

We would not wish to be understood as holding that any mere stranger may redeem from a tax sale. But Boyd was more than a mere stranger to the land. He had some color of authority to act in the premises, and no doubt did act in good faith, as agent. His effort to save the land for his unheard from expected principal was well intended, and a very proper act, and we think should be sustained. We are of opinion that he was enough of an agent, in respect to the land, to redeem from the tax sale, and that he did make a valid redemption. Mariah L. Houston made but a quitclaim deed of the land to her son, the defendant, who,paid nothing for it, and stands in no better position than his grantor.

The decree will be affirmed.

*Decree affirmed.*