**Application of County Treasurer, etc.**
**Petition of T. P. F. Corporation for Issuance of Tax Deed, Petitioner-Appellant v. James A. Dirst, Respondent-Appellee.**

**Gen. No. 54,354.**

First District, Fourth Division.

October 30, 1970.

Harvey Melinger, of Chicago, for appellant.

Malkin and Gottlieb, of Chicago, for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

Petitioner appeals from an order denying its petition to expunge respondent's redemption from a real estate tax sale, and dismissing its petition for the issuance of a tax deed.

The following chronology of facts is not in dispute:

February 1, 1966. Quitclaim deed, executed on that date, from the Executor of the Estate of Mary Samuelson, also known as Mary Olson, to Respondent.

February 9, 1966. Petitioner's assignor purchased the property at a sale for delinquent 1964 taxes.

February 7, 1969. On this, the last day of the extended redemption period, the County Treasurer accepted a deposit for redemption from Respondent in the amount of $167.55. The record title on that date was in Mary Olson.

February 19, 1969. Deed of February 1, 1966, filed for record by Respondent.

February 28, 1969. Petition to expunge redemption filed, alleging that Respondent had not been entitled to redeem on February 7, 1969, because he had no interest of record on that date.

May 2, 1969. Answer of Respondent filed, relying on deed to him dated February 1, 1966, and recorded February 19, 1969.

May 14, 1969. Order denying petition to expunge and dismissing petition for the issuance of a tax deed.

As presented by the parties, the sole issue on this appeal is a relatively simple one: Does the decision in Weiner v. Jobst, 22 Ill2d 11, 174 NE2d 561 control this case, or does it not? Petitioner contends that it does, and that Respondent's attempted redemption was ineffectual because on that date he did not have any interest of record. Respondent argues that Weiner is distinguishable on its facts, and apparently the trial court so held.

■ In Weiner, the court split four to three, with Chief Justice Schaefer writing the principal dissenting opinion. A close reading of the majority and minority opinions would prompt us to agree with the dissent if such a path were open to us, which, of course, it is not. We do believe, however, that it is required of us to examine the court's opinion carefully to determine its breadth or narrowness of applicability in the context of the other cases bearing on the subject, and the factual situation in the case now pending before us.

Petitioner would have us hold, in effect, that in the Weiner opinion the court's use of the term "record title" in statements concerning the right to redeem, had the effect of overruling its previous decisions in People v. Hess, 7 Ill2d 192, 197, 130 NE2d 280, and Franzen v. Donichy, 9 Ill2d 382, 387, 137 NE2d 825. In Hess, the court had held that while the constitutional and statutory right to redeem does not inure to the benefit of "a complete stranger to the property," there is no requirement of "complete legal title, but only an undefined 'interest' in the real estate." This language was specifically cited with approval in Franzen, which upheld an equitable interest in the property as sufficient basis for redemption even though not recorded until long after foreclosure sale. The court then went on to make the often-repeated comment that redemptions are looked upon with favor, and a liberal construction must therefore be given to redemption laws.

The court's opinion in Weiner, far from overruling Hess and Franzen, appears either to rely on them or to distinguish them on the facts. The Weiner opinion also cites section 5 of Article IX of the constitution which provides that the right of redemption "shall exist in favor of owners and persons interested" in the real estate. From this citation, too, it becomes obvious that the court could not have been deciding that "persons interested" in the property must be "owners."

We are required, therefore, to look for some basis for distinction between the Weiner and Franzen decisions, and we think there is such a basis. In Franzen, the redeeming interest was recorded after sale but before a tax deed had been issued to the purchaser. In Weiner, on the other hand, the court's opinion makes repeated reference to the fact that the interest on which redemption was sought had not been established until after completion of the tax title proceedings. At page 14 the court pointed out that on April 14, 1960, the trial court had ordered the redemption to be expunged. On the same day, a tax deed was directed to be issued and was issued, and it was recorded on April 18. At page 16 the court stated:

The petition to vacate the order of April 14, 1960, shows that completion of the record chain of title in appellant was too late. A duplicate trustee's deed was issued on April 18 and recorded April 21, 1960. In short, appellant was a stranger in the chain of title and did not have good record title until after the order of April 14, 1960, setting aside the redemption by Lyons, the issuance of the tax deed to Smith and its recording. Good title was not established in the bank until after Smith, the purchaser at the foreclosure sale, had completed his title.

At page 17 the court noted that the petitioner "did not have record title until after the conclusion of the proceedings." Again, on the same page, the court pointed out that the duplicate deed supplying the missing link in petitioner's title chain was recorded on April 18 so that "its interest was not established until after the final order of April 14, 1960." And, finally, on page 19, the court referred to petitioner as one who did not "establish any title to the property until after the case (was) concluded."

There is an additional but related ground for distinction between Weiner and the case now before us. In Weiner, the Supreme Court considered the state of the trial record as it existed at the time the "final order" was entered on April 14; this time was apparently considered as the proper date for review of both the order of that date and of the trial court's order denying the redeemer's petition to vacate. As of this critical time, the record showed the redeemer had filed an answer to the tax buyer's petition to expunge the redemption; the answer disclosed the redeemer's claim that some 23 years earlier there had been an unrecorded deed which would have supplied the missing link in the chain of title; but the vital deed was not produced and there was no proof of its existence. Thus, the redeemer was unable to "establish" that he was a person interested in the property. Before the execution of a duplicate deed to supply the missing link, the tax deed had been issued and recorded. Then, on the petition to vacate, both the

trial and reviewing courts determined the correctness of the April 14th order strictly on the basis of what had been presented by the redeemer at that time, and without reference to later facts or events which were not available as proof when the order was entered, since the deed had been lost and the duplicate was not executed until later.

██ A very different situation obtained in the present case. The original unrecorded deed was in existence and had been recorded at the time of the hearing on the tax buyer's petition to expunge the redemption. The redeemer's interest in the property was therefore "established" before that critical time in the proceedings; as we have mentioned, the tax deed has never been issued or recorded and the proceedings for the issuance of such deed had not been "concluded." In thus establishing himself as an owner or person interested in the property, the redeemer was not "too late."

We hold that Respondent's interest in the property was adequate to support his redemption, and the order of the Circuit Court is, therefore, affirmed.

Affirmed.

STAMOS, P. J. and DRUCKER, J., concur.