### A. C. HERNDON ET AL. V. F. J. DAVENPORT ET AL.

#### No. 2857.

1. **Self-Serving Declarations.**—Declarations of a remote vendor of land not in possession of it, asserting ownership in it and in the land certificate, are not competent evidence to support title in the party making the declarations.

2. **Bankruptcy Proceedings.**—After bankruptcy proceedings were closed property of the bankrupt not disposed of by the assignee reverted to the bankrupt. The title which vested in the assignee in bankruptcy can not be used as an outstanding title to defeat the recovery of land so undisposed of when claimed by the heirs of the bankrupt.

3. **Fact Case.**—See facts held insufficient to prove a sale of land.

APPEAL from Ellis. Tried below before Hon. Anson Rainey.
The opinion states the case.

*F. P. Powell*, for appellants.

*Groce & Templeton*, for appellees.

STAYTON, CHIEF JUSTICE.—Appellants brought this action to recover 171 acres of land, patented to them as the heirs of John H. Herndon, by patent issued December 6, 1887.

The defendants claim by regular chain of transfer from A. C. McCartney, to whom it is claimed that John H. Herndon sold the land certificate by virtue of which the land was patented.

Plaintiffs introduced the patent, proved that John H. Herndon died in July, 1879, and that they were his heirs.

On behalf of defendants it was proved that the land in controversy was located by virtue of William Nabers certificate No. 3116, issued May 1, 1838, and transferred from Nabers to S. M. Frost, August 25, 1838, and from Frost to John H. Herndon, October 8, 1859.   Certified Land Office copies of these transfers were introduced in evidence.   It was proved that John H. Herndon in 1859 dealt extensively in land and land certificates, and his pecuniary condition was good, and continued so until 1865, from which time until his death he was pecuniarily embarrassed.   He died in July, 1879.   On June 6, 1861, McCartney made application to the county surveyor of Ellis County for a survey by virtue of this Nabers certificate 3116, and in April, 1862, a survey of the land in controversy was made by virtue of this application, and the application, certificate, and field notes were filed in the Land Office September 13, 1863.   On March 1, 1876, A. C. McCartney conveyed the land embraced in this survey, and in controversy, to D. B. Bullard by warranty deed, and subsequently Bullard and J. D. Templeton sold the land, in different parcels, to appellees and those under whom they claim.   In the same transfer by which Frost conveyed to John H. Herndon the Nabers certificate 3116, he also conveyed two other certificates, to-wit, No. 8037 to Frost as assignee of Matthew R. Williams, and William Nabers No. 541.   It was shown that John H. Herndon transferred these two certificates in his lifetime and never claimed the land located by virtue of them.   The transfer by William Nabers to S. M. Frost included his two certificates, 3116 and 541, and was filed in the Land Office with "file 541."   On December 31 John A. Herndon filed his voluntary petition to be adjudicated a bankrupt in the United States Court at Galveston, accompanied by the affidavits and schedules of debts and liabilities required by law, which schedules did not contain the Nabers certificate 3116, nor any land located by virtue of it, upon which application an assignee of the estate of applicant was appointed, and the applicant was duly adjudicated a bankrupt, and in November, 1869, received his discharge.

In 1876 John H. Herndon made a memorandum in his diary to the effect that this Wm. Nabers certificate No. 3116 had been located on 171 acres of land on Onion Creek, in Ellis County, and this memorandum coming to the attention of his son, A. C. Herndon, in August, 1887, caused him to investigate the matter, and he, finding from the records of the Land Office the transfer of the certificate to his father, and no transfer from his father, applied for and obtained a patent to the heirs of his father for the land so located.

The death of A. C. McCartney was proved, and that search among his papers had failed to disclose any transfer of the Nabers certificate, and it was further shown that McCartney, while D. B. Bullard had a mortgage on the land in controversy, and after J. D. Templeton had an execution levy on it, claimed ownership of this land and of the certificate by virtue of which it was located.

The certificate by virtue of which the land was patented was for 320 acres, and the part not placed on the land in controversy was never located.

There has been some adverse possession by persons claiming under McCartney since 1881.

The survey returned to the General Land Office purported to have been made for Wm. Nabers, though the application for the survey was made by McCartney. The verdict for appellees was general.

Appellants show title to the land, and are entitled to recover unless the evidence justifies a finding that the certificate by virtue of which it was granted became the property of McCartney, or unless defendants show title by limitation.

The testimony of a witness to the effect that at some remote period McCartney claimed to own the land and the certificate by virtue of which it was granted was objected to, and under the circumstances of this case we are of opinion the objection should have been sustained.

Assertion of ownership, accompanied with possession long continued, may no doubt be shown in support of a presumption that a conveyance once existed, but there are no facts shown in this case which would make the declaration of McCartney admissible.

The proceedings in bankruptcy, we think, were properly admitted in evidence, and tended to show that John H. Herndon did not own either the land or certificate by virtue of which it was granted at the time of filing his petition and inventory, but the patent to appellants cuts off all inquiry upon that question by any person other than some one who can show that Herndon conveyed the certificate or land to him, or to some one under whom he claims.

If the land belonged to John H. Herndon it passed to his assignee in bankruptcy for the purposes of that proceeding, whether scheduled or not; but if not disposed of by the assignee at the termination of the bankrupt proceedings, title remained in John H. Herndon. Jones v. Pyron, 57 Texas, 47.

Title of the assignee in bankruptcy could not be set up by appellees as outstanding superior title to that presented by appellants.

The important inquiry in the case is, was the evidence sufficient to show that John H. Herndon sold the land certificate to McCartney? To us it is too clear that the evidence is insufficient to establish that fact.

The only legitimate evidence tending to show that fact was that Mc-

Cartney caused the certificate to be located on the land, and a survey to be made in the name of the original grantee, and that this was returned to the General Land Office.

It is shown that Herndon was an extensive dealer in land and land certificates at the time this was done, and the inference, from what is shown, is just as strong that McCartney was acting for Herndon as for himself.

A discussion of the evidence with a view to determine probabilities would be an unprofitable as well as unnecessary undertaking, and it is sufficient to say that the evidence was insufficient to sustain a finding that the land certificate or land belonged equitably or legally to McCartney.

It may be that some of the defendants showed title to tracts claimed by them under the statutes of limitation; but as the case was tried by a jury we do not feel authorized to pass on that question. Nor is it necessary for us to pass on the sufficiency of appellees' pleadings to entitle them to recover for improvements made on the land, for they will have opportunity to amend.

For the errors noticed, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered December 6, 1889.